UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS BOY,<br><br>                           Plaintiff,<br><br>v.<br><br>ADMINISTRATIVE COMMITTEE FOR ZIMMER BIOMET HOLDINGS, INC. et al.,<br><br>                        Defendants. | Case No.: 16-CV-197-CAB-BLM<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 67, 76] |

This matter is before the Court on Defendants' motion for summary judgment. The motion has been fully briefed[1] and a hearing was held on May 25, 2017. For the reasons set forth below, the motion is granted.

**I.    Background**

Plaintiff was Vice President, Global Sales, for Zimmer Dental, Inc. ("Zimmer Dental") from August 2008 through March 6, 2015. First Am. Complaint ("FAC") ¶ 4. Zimmer Dental's business is focused on supplying dental products and technology to clients around the world. *Id.* While employed by Zimmer Dental, Plaintiff was a

---

[1] Plaintiff's motion for leave to file a sur-reply [Doc. No. 76] is **GRANTED**.

1

participant in Defendant Zimmer Biomet Holdings, Inc. Restated Severance Plan (the "Plan"). *Id.* ¶ 1. Zimmer Biomet Holdings, Inc., formerly Zimmer Holdings, Inc. ("Zimmer Holdings") is the Plan's sponsor.[2] *Id.* ¶ 5. Defendant Administrative Committee for Zimmer Biomet Holdings, Inc., formerly Zimmer Holdings, Inc. (the "Committee") is the Plan's administrator. *Id.* ¶ 7. The Committee's members at all relevant times were Dennis Cultice, Karen Monroe, and Lance Irwin. *Id.* ¶ 12.

The Plan specifies that a participant will not be eligible to receive benefits if his employment is terminated for, among other things:

> Willful misconduct or activity deemed actually or potentially detrimental to the interests of the Company, which may include, but is not limited to, dishonesty; theft; violation of one or more Company policies . . . .
>
> Any act or omission causing, or having potential to cause, significant harm or loss to the Company, its officers and/or employees.

Moore Dec., Ex. B at 88.

On March 3, 2015, Nathaniel Hwang, Zimmer's compliance officer and senior healthcare counsel, sent an email concerning Plaintiff to Bill Fisher and Chad Phipps, Zimmer's senior vice president-global human resources and general counsel, respectively, with the subject line "Termination Approval Request." *Id.*, Ex. A. at 27, 29. The text of the email stated that the basis for termination was "Serious misconduct" and provided the following "Summary of key facts and reasoning:"

> A recent investigation, which was triggered by a Compliance Hotline report that certain Zimmer Dental leaders were engaging in inappropriate and fraudulent sales activity in an effort to ensure a year-end bonus payout from which they would personally benefit, confirmed that Jens did in fact engage in such inappropriate and fraudulent activity for such a purpose. When

---

[2] The FAC also identifies Zimmer, Inc., as a subsidiary of Zimmer Holdings and an affiliate of Zimmer Dental. Meanwhile, the parties' summary judgment briefs frequently refer to the various Zimmer entities collectively as "Zimmer." Because the parties do not place any significance on corporate formalities among the various Zimmer corporate entities, the Court assumes such formalities are irrelevant to the issues in this case and will also use "Zimmer" to refer to such entities collectively.

> interviewed, Jens refused to acknowledge wrongdoing or to accept any accountability for any of his actions.
>
> Though the sales amounts involved were immaterial from a financial reporting perspective, the actions Jens engaged in are considered dishonesty and fraud. These actions resulted in the falsification of company records, which is serious misconduct under Zimmer's Code of Business Conduct and behavior of employees policy. Accordingly, Jim Crines (as acting VP over the global businesses) and I are jointly recommending Jens' immediate separation from employment. Based on the reason for termination, Jens would not be eligible for any offer of severance benefits.

*Id.* Fisher and Phipps both responded to Hwang's email approving the termination without any mention of his eligibility for severance benefits. *Id.*

Three days later, on March 6, 2015, Crines sent Plaintiff a letter terminating his employment and stating that he would be ineligible for severance benefits under the Plan. The letter stated:

> We recently concluded a through [sic] investigation that you engaged in serious misconduct by deliberately engaging in fraudulent sales activity in an effort to manipulate financial results to ensure that you and others would receive certain bonus compensation. This dishonesty and falsification of company records violated Zimmer's Code of Business Conduct and the behavior of employees policy. As a result, your employment is terminated effective as of the date set forth above.
>
> Because you are being separated from employment for willful misconduct or activity deemed actually or potentially detrimental to the interests of Zimmer, in the form of dishonesty and violation of one or more Company policies, and for acts causing, or having potential to cause, significant harm or loss to Zimmer, you are not eligible for severance benefits under the terms of the [Plan]. . . .  The reasons for your discharge have been explained to you. . . .

*Id.* Ex. A at 23. The Committee did not participate in this initial decision to deny Plaintiff severance benefits. *Id.* Ex. X.

By letter dated March 14, 2015, Plaintiff notified the Committee of his intent to appeal the determination that he was ineligible for severance benefits and requested a copy of the administrative record. *Id.* Ex. P. On March 20, 2015, Plaintiff sent another letter to

the Committee again requesting the administrative record along with certain other specified documents to the extent such documents were not part of the administrative record. *Id.*, Ex. Q. Plaintiff ultimately retained counsel to represent him in connection with his appeal. *Id.* Ex. S. The Committee, meanwhile, was represented by the law firm of Faegre Baker Daniels, which also serves as defense counsel in this lawsuit. *Id.* Ex. T.

On March 30, 2015, Michael Nader from Faegre Baker Daniels responded to Plaintiff's request for the administrative record and provided what he asserted was "the administrative record to date." *Id.* On March 31, 2015, Matthew Wilson, an HR Director for Zimmer Dental, provided Plaintiff with a complete copy of his personnel file. *Id.* Ex. U. One June 7, 2015, Mr. Nader provided Plaintiff's counsel with additional documents that Plaintiff had requested. *Id.* Ex. W. On July 12, 2015, Mr. Nader notified Plaintiff's counsel that he would have until August 31, 2015 to submit his appeal. *Id.* Ex. X.

On August 30, 2015, Plaintiff, through counsel, submitted his appeal of the denial of severance benefits to the Committee. *Id.* Ex. A. On September 30, 2015, Mr. Nader sent Plaintiff's counsel an email letting him know that the Committee was waiting for a response from Zimmer, which it expected to receive by mid-October, and that the Committee would give Plaintiff the opportunity to reply to the company's response. *Id.* Ex. Y. On November 4, 2015, Zimmer responded to Plaintiff's appeal with a letter from Mr. Hwang to the Committee. *Id.* Ex. Z. On November 23, 2015, Plaintiff submitted his reply to Zimmer's response. *Id.* Ex. BB. On December 23, 2015, Mr. Nader, on behalf of the Committee, sent Plaintiff's counsel a letter notifying him that the Committee had denied Plaintiff's appeal. *Id.* Ex. C.

The Committee's decision letter discusses Plaintiff's arguments for why the initial decision to deny him severance benefits was erroneous, along with the company's response, and concludes that Plaintiff "intended to pre-ship goods and nonconforming product contrary to normal Company business practice for the purpose of appearing to meet 2014 sales goals and earn a bonus." *Id.* Ex. C at 104. The letter further noted that "[f]or each action reviewed, Mr. Boy provides a reason for his conduct. Each reason, however,

is undermined by his acknowledgment that the actions were to meet 2014 sales targets."
*Id.* Ultimately, the Committee found that Plaintiff's:

> actions to pre-ship goods, ship products that did not meet a customer's orders or procedures, and request favors to book sales in 2014, are all actions that are "actually or potentially detrimental to the interests of the Company." Furthermore, the Committee finds that his actions to seek favors from Hakuho [a Zimmer Dental customer] could have potentially caused significant harm to the Company by adversely affecting its relationship with Hakuho.
>
> Given the potential harm to the Company and Mr. Boy's self-interested reasons to undertake such actions, the Committee finds the reasons for separation, even if not constituting fraud, satisfy both of the foregoing reasons that benefits are not payable under the terms of the Plan. As such, Mr. Boy's appeal is denied.
>
> The Administrative Committee considered Mr. Boy's assertion that he was acting under the direction of his superior, Harold Flynn. Given Mr. Boy's longevity with the Company and senior position, the Administrative Committee concluded that, even if true, Mr. Boy's conduct is not excused. At a minimum, Mr. Boy should have reported the alleged conduct to Mr. Flynn's supervisors. Mr. Flynn's alleged actions and whether he should have been terminated, as suggested in your letter, is not before the Administrative Committee.

*Id.*

On January 26, 2016, Plaintiff filed the instant lawsuit under the Employee Retiree Income Security Act of 1974 ("ERISA"). The FAC asserts two claims: (1) unlawful denial of plan benefits in violation of 29 U.S.C. § 1132(a)(1)(B); and (2) penalties for failure to provide relevant documentation relevant to his benefits claim in violation of 29 U.S.C. § 1132(c) and 29 C.F.R. 2560.503-1(h)(2)(iii). Defendants move for summary judgment on both claims.

**II.    Legal Standard**

Ordinarily, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[H]owever, [] where the abuse of discretion standard applies in an ERISA benefits denial case, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'" *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009) (quoting *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999)).

### III. Discussion

#### A. Unlawful Denial of Benefits, 29 U.S.C. § 1132(a)(1)(B)

In their papers, both parties focus almost exclusively on the standard of review that the Court should apply to Plaintiff's unlawful denial of benefits claim. Defendants argue that the Court is required to review the Committee's decision denying severance benefits under an abuse of discretion standard. Plaintiff, meanwhile, argues that the Court should exercise de novo review. Ultimately, the Court need not resolve this dispute. Although Plaintiff raises legitimate concerns about the procedures used by the Plan and the Committee to administer Plaintiff's claim, and whether, as a result of those procedures, the Committee's decision denying Plaintiff severance benefits warrants deference, the Committee's decision was correct even using a de novo review.

Plaintiff frames the question before the Committee, and before the Court in the lawsuit, as a determination of whether Zimmer Dental was justified in terminating Plaintiff for grounds that rendered him ineligible for severance benefits. In other words, according to the Plaintiff, the question is whether Plaintiff actually committed willful misconduct or some other wrongdoing that warranted his termination by Zimmer Dental. The Plan, however, states that an employee is not eligible for benefits if his "*employment is terminated for* . . . [w]illful misconduct or activity deemed actually or potentially detrimental to the interests of the Company, which may include, but is not limited to, dishonesty; theft; violation of one or more Company policies" or for "[a]ny act or omission causing, or having potential to cause, significant harm or loss to the Company, its officers and/or employees," is ineligible for benefits. Moore Dec., Ex. B at 88 (*emphasis* added).

Thus, the question for the Committee, and now for this Court, is not whether Plaintiff actually engaged in willful misconduct or took other actions that rendered him ineligible for severance benefits. The question is only whether Zimmer Dental terminated Plaintiff for willful misconduct or other actions that rendered him ineligible for severance benefits. On this latter question, the answer is clear from the undisputed facts before the Court.

In the March 6, 2015, letter terminating Plaintiff's employment, Zimmer Dental stated that the reason for Plaintiff's termination was that he had "engaged in serious misconduct by deliberately engaging in fraudulent sales activity," and that his actions constituted "dishonesty" and "resulted in the falsification of company records, which is serious misconduct under Zimmer's Code of Business Conduct and behavior of employees policy." Moore Dec. Ex. A at 23. Plaintiff does not dispute that he actually performed the acts that Zimmer Dental concluded to be "serious misconduct" in the letter or that Zimmer Dental terminated Plaintiff based on this conclusion. Rather, Plaintiff simply disagrees with Zimmer Dental's conclusion that his actions constituted willful misconduct and argues that his actions were not inappropriate. However, in making a benefits decision, it is not for the Committee or this Court to investigate whether Zimmer Dental was correct, or justified, in its conclusions Plaintiff's actions constituted "willful misconduct" and in terminating him based on those conclusions. The only relevant question here is whether Zimmer Dental actually terminated Plaintiff for reasons that rendered him ineligible for severance benefits. Plaintiff may not think he did anything the justified termination for cause, but there is no dispute that Zimmer Dental terminated him for acts that it concluded were willful misconduct. Accordingly, the Committee did not wrongfully deny Plaintiff severance benefits under the Plan, and Defendants are entitled to summary judgment on Plaintiff's first claim.

### B. Penalties for Failure to Provide Relevant Documentation, 29 U.S.C. § 1132(c) and 29 C.F.R. § 2560.503-1(h)(2)(iii)

"Under 29 U.S.C. § 1132(c)(1), a plan administrator who 'fails or refuses to comply with a request for any information which such administrator is required by this subchapter

to furnish . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal.'" *Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1160 (9th Cir. 2016). On the other hand, "29 C.F.R. § 2560.503–1(h)(2)(iii) requires employee benefits plans to '[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.'" *Id.* at 1160-61. In the amended complaint, Plaintiff states that he is entitled to penalties from the Committee under 29 U.S.C. § 1132(c) because the Committee "withheld and restricted [his] access to substantial portions of the records and documentation that could contain evidence relevant to his appeal to the Administrative Committee and the Plan." [Doc. No. 12 at ¶ 29.] The amended complaint makes this claim against the Committee but not against the Plan. [Doc. No. 12 at 7.]

In his opposition brief, Plaintiff argues only that summary judgment should be denied on this claim because there is evidence that the Committee did not produce information from a 10-K filing along with various emails and correspondence and therefore did not comply with 29 C.F.R. § 2560.503–1(h)(2)(iii). [Doc. No. 72 at 25.] Regardless of such evidence, the Committee, as Plan administrator, is entitled to summary judgment on this claim because:

> a failure to follow claims procedures imposed on benefits plans, such as outlined in 29 C.F.R. § 2560.503–1(h)(2)(iii) does not give rise to penalties under 29 U.S.C. § 1132(c)(1). "Plans" and "plan administrators" are separate entities with separate definitions under ERISA. See 29 U.S.C. § 1002(1), (2)(A), (3), (16)(A). Penalties under 29 U.S.C. § 1132(c)(1) can only be assessed against "plan administrators" for failing to produce documents that they are required to produce as plan administrators. 29 C.F.R. § 2560.503–1(h)(2)(iii) does not impose any requirements on plan administrators, and so cannot form the basis for a penalty under 29 U.S.C. § 1132(c)(1).

*Lee*, 829 F.3d at 1162.

### IV. Disposition

In light of the foregoing, Defendants' motion for summary judgment is **GRANTED**. The Clerk of Court is instructed to enter **JUDGMENT** in favor of Defendants and close this case.

It is **SO ORDERED**.

Dated: June 13, 2017

Hon. Cathy Ann Bencivengo
United States District Judge